## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

_____

REGIONS BANK,                                          :
                                                       :
                        Plaintiff,                     :
                                                       :
            v.                                         :            CASE NO._____
                                                       :            JURY TRIAL DEMANDED
DANIEL E. LUNA,                                        :
RENE JOSE CRESPO-OROZCO,                               :
MICHAEL W. SIMONIAN, and                               :
WELLS FARGO CLEARING SERVICES, LLC                     :
d/b/a WELLS FARGO ADVISORS,                            :
                                                       :
                        Defendants.                    :
_____

### <u>VERIFIED COMPLAINT</u>

Plaintiff, Regions Bank ("Regions"), by and through its undersigned counsel,

hereby files the following *Verified Complaint* for injunctive relief to preserve the *status*

*quo ante* against Defendants Daniel E. Luna ("Luna"), Rene Jose Crespo-Orozco

("Crespo"), and Michael W. Simonian ("Simonian") (collectively referred to herein as

the  "Individual Defendants") and Wells Fargo Clearing Services, LLC d/b/a Wells Fargo

Advisors, LLC ("Wells Fargo") for: (i) breach of contract; (ii) misappropriation of trade

secrets under Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq*.; (iii)

misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836

*et seq.*; (iv) unfair competition; (v) unjust enrichment; (vi) tortious interference with

business relationships; and (vii) civil conspiracy, and in support thereof avers as follows:

### I.  <u>THE PARTIES</u>

1.      Regions is an Alabama Chartered Bank based in Birmingham, Alabama, and

transacting business in this judicial district.

2.      Luna is a former financial advisor ("FA") who was employed at Regions'
branch office located at 50 Blake Blvd., Building D, Celebration, Florida 34747.  Luna is
a resident of this District with a home address at 8192 Canetti Street, Orlando, Florida
32827.

3.      Crespo is a former FA who was employed at Regions' branch office located at
607 Dunlawton Avenue, Port Orange, Florida 32127.  Crespo is a resident of this District
with a home address at 6847 Forkmead Lane, Port Orange, Florida 32128.

4.      Simonian is a former FA who was employed at Regions' branch office located
at 40994 West Lake Mary Boulevard, Lake Mary, Florida 32746.  Simonian is a resident
of this District with a home address at 1442 Daystar Lane, Deltona, Florida 32725.

5.      Wells Fargo is a financial services firm incorporated in the state of Delaware,
with its principal place of business at One North Jefferson Avenue, St. Louis, Missouri
63103. Wells Fargo transacts business in this District at its branch offices located at 1473
E. Osceola Parkway, Kissimmee, Florida 34744, 2502 Enterprise Road, Orange City,
Florida 32763, and 631 S. Orlando Avenue, Winter Park, Florida 32789.

## II.  JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as
the parties are diverse and the amount in controversy exceeds $75,000, exclusive of
interest and costs.

7.      Regions also brings this action pursuant to the Defend Trade Secrets Act, 18
U.S.C. § 1836 *et seq.*  This Court likewise possesses subject matter jurisdiction over

Regions' claims as each arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

8.      This Court possesses supplemental jurisdiction over Regions' remaining claims pursuant to 28 U.S.C. § 1367.

9.      Venue is appropriate in this district, as Defendants conducted business within the district and the events upon which the allegations in the Complaint are based occurred within this district.

10.      Wells Fargo also transacts business within this district at its branch offices in Kissimmee, Orange City, and Winter Park, Florida.

### III.  FACTUAL BACKGROUND

**A.      *Individual Defendants' Roles at Regions, Employment with Regions, and Resignations***

11.      Regions is a full-service provider of consumer and commercial banking, wealth management, and mortgage products and serves customers across the South.

12.      Regions employed Luna as an FA in its investment services division in Celebration, Florida from September 3, 2013 until his abrupt resignation on December 1, 2020.

13.      Regions employed Crespo as an FA in its investment services division in Port Orange, Florida from January 3, 2017 until his abrupt resignation on November 30, 2020.

14.      Regions employed Simonian as an FA in its investment services division in Lake Mary, Florida from October 3, 2016 until his abrupt resignation on November 30, 2020.

15.      On behalf of Regions, Luna, Crespo, and Simonian provided a broad range of

3

investment solutions and products to help meet Regions' customer goals and offer in-depth guidance through financial planning services.

16.     Financial Advisors are required and entrusted to develop a deep understanding of the customers they service, the customer's current financial standing, and their short and long-term goals to provide sound advice and guidance to meet the customer's financial objectives.

17.     Luna, Crespo, and Simonian conducted and participated in numerous investment performance and relationship reviews for each of the customer accounts they serviced at Regions.  Therefore, Luna, Crespo, and Simonian had intimate working relationships with, and access to information about, each Regions' customer they served.

18.     Additionally, Luna, Crespo and Simonian received extensive customer referrals through Regions and its partners, as Regions' culture of service is customer-focused and partnership centric.

19.     By 2020, Luna serviced **544** Regions' customer accounts representing **$59,296,588** in assets under Regions' management and **$492,926** in annual revenue.

20.     By 2020, Crespo serviced **295** Regions' customer accounts representing **$38,151,654** in assets under Regions' management and **$331,132** in annual revenue.

21.     By 2020, Simonian serviced **405** Regions' customer accounts representing **$44,472,670** in assets under Regions' management and **$693,732** in annual revenue.

22.     Regions Bank refers its customer with investment services needs to its Financial Advisors.  Luna, Crespo, and Simonian benefited from significant referrals from Regions Bank.

23.   For instance, from January 2020 to October 2020 alone, Luna received 88 customer referrals from Regions and its partners, Crespo received 75 customer referrals Regions and its partners, and Simonian received 262 customer referrals from Regions and its partners.

24.   Throughout their employment, Regions trained the Individual Defendants, compensated them, and provided them with employment-related benefits and opportunities.

25.   In addition, Regions provided the Individual Defendants with the benefit of Regions' advertising, goodwill, and name recognition.

26.   On November 30, 2020, Crespo and Simonian resigned abruptly and without notice from Regions to join Wells Fargo, a direct competitor, in Florida.

27.   On information and belief, Wells Fargo instructed Crespo and Simonian to resign simultaneously from Regions, with no prior notice, to gain an unfair competitive advantage and to cause disruption to Regions' business.

28.   Regions contacted Luna immediately following the resignations of Crespo and Simonian.  Luna indicated that he was shocked that Crespo and Simonian resigned to join Wells Fargo.

29.   Regions asked whether Luna had plans to resign to join Crespo and Simonian at Wells Fargo.  Luna falsely indicated he did not and stated, "I am here," wrongly representing to Regions that he had no intention of resigning.

30.   Luna resigned his employment with Regions the next day, December 1, 2020.

31.   Since their resignations, Luna, Crespo, and Simonian have directly contacted

Regions' customers to solicit, encourage, and/or urge customers to transfer their accounts from Regions to Wells Fargo.

32.     To date, **27** customers have transferred their accounts and relationships from Regions to Wells Fargo because of Luna's, Crespo's, and Simonian's misconduct.  These relationships total over **$3,104,000** in assets under Regions' management.

**B.       *The Individual Defendants' Employment Agreements and Regions' Policies Prohibit Them from Using or Disclosing Regions' Confidential/Proprietary Information and from Soliciting, Inducing, Urging, or Encouraging Customer to Move their Business.***

33.     Upon commencement of their employment at Regions, Luna, Crespo, and Simonian executed *Financial Consultant Employment Agreements* ("*Agreements*") containing post-employment restrictions that prohibit the removal and/or use of customer information and prohibit the soliciting, inducing, urging, or encouraging the customers that they serviced at Regions to leave the bank.  See Luna's, Crespo's, and Simonian's *Agreements*, attached hereto as Exhibits "**A**," "**B**," and "**C,**" respectively.

34.     These *Agreements* are governed by the laws of the State of Alabama.  Id. at ¶ 14.  The *Agreements* are enforceable under Alabama and Florida law.

35.     In consideration of the benefits provided to them by Regions, Luna, Crespo, and Simonian agreed in their respective *Agreements*, *inter alia*, that:

> **Non-disclosure**.  Employee acknowledges that he or she will have access to "Confidential/Proprietary Information," as defined below, of the Bank and its affiliates, and agrees that (a) all Confidential/Proprietary Information is the confidential, valuable, unique and special property of the Bank and its affiliates, (b) Employee shall not at any time directly or indirectly use, disclose, furnish, sell, transfer, communicate, or make accessible, in any manner, any Confidential/Proprietary Information for Employee's own benefit or for the benefit of anyone other than the Bank and its

affiliates, (c) Employee has not been granted a right or license to any Confidential/Proprietary Information, and (d) **Employee is not authorized to, and shall not, copy, duplicate or remove any Confidential/Proprietary Information from the premises of the Bank or its affiliates without the express written permission of the Bank. "Confidential/Proprietary Information" refers to any and all confidential and/or proprietary information of the Bank or any of its affiliates, including, without limitation, customer lists, customer information, customers' identities, customers' personal data and contact information, nonpublic and/or confidential customer information, customers' account information and balances, customers' investment and financial preferences, trade secrets, confidential methods of operation and organization, pricing, markups, commissions, manuals and policies and procedures, unique processes, products, business or marketing plans, and other intellectual property and that all such information constitutes confidential, valuable, special and unique property of the Bank and its affiliates or their vendors.** Employee agrees to comply with all laws and applicable agreements which prohibit the unauthorized copying and duplication of various forms of media (including but not limited to printed materials, newspapers and computer software).

. . .

**<u>Non-Solicitation of Customers</u>. During Employee's employment and for a period of twelve (12) consecutive months following the termination of employment for any reason whatsoever, Employee agrees that he or she shall not**, either on Employee's own behalf or as an agent, consultant, partner, employee, owner, or representative of any person or entity, **either directly or indirectly, solicit, induce, seek to induce or otherwise urge or encourage any Customer to terminate, cancel, reduce, or limit their business relationship with the Bank or any affiliate of the Bank** (including without limitation any brokerage, investment or insurance accounts or relationships established through the Bank-Designated Networking Provider) **or to establish a similar relationship with Employee or any firm, entity or group with which Employee is employed or acts as independent contractor or agent.** "Customer" refers to any person or entity who has (or during the course of Employee's employment with the Bank had) a business relationship with the Bank or any of its affiliates or the Bank-Designated Networking Provider if, during the course of Employee's employment, the Employee or any person who the Employee directly or indirectly supervised (1) provided, offered or

> sold products or services to such person or entity, (2) made sales proposals to such person or entity, (3) obtained information concerning the business or financial affairs of such person or entity or (4) received any commissions, fees or other compensation referable to, or based on, any transactions conducted or services obtained by such person or entity from the Bank, any affiliate of the Bank or the Bank-Designated Networking Provider; provided, however, that Customer shall not include the persons or entities, if any, listed on Appendix I to this Agreement. If Employee violates any of the restrictions in this Section, the duration of the restrictions will be extended by the length of time during which Employee is in violation

Id. at ¶¶ 7 and 11 (emphasis added).

36.     The foregoing *Agreements* were and are in full force and effect at all times material hereto, including the present.

37.     As employees of Regions, Luna, Crespo, and Simonian were also familiar with Regions' policies on confidentiality, as well as the great importance Regions places on the security of its customers' information.

38.     Regions spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information, including, *inter alia*, its goodwill; name recognition; reputation; internal personnel and financial information; computer software and systems; manner and method of conducting business; employee names and contact information; training and educational materials; marketing materials and plans; customer names and contact information; business strategy documents and reports; internal reports; confidential and proprietary information provided to Regions by customers and/or other third parties (hereinafter "Confidential/Proprietary Information").

39.     Regions' Confidential/Proprietary Information is among its most valuable

assets, provides Regions with a competitive advantage, would be very valuable to a competitor, such as Wells Fargo, and is deserving of trade secret protection.

40.   Upon information and belief, Wells Fargo was aware of the existence and terms of Individual Defendants' restrictive covenants prior to hiring them as employees.

41.   Regions employed Luna, Crespo, and Simonian in its Celebration, Port Orange, and Lake Mary, Florida branch offices, respectively, where they were responsible for servicing customer accounts.

42.   In the scope of their employment, Regions entrusted Luna, Crespo, and Simonian with access to Regions' Confidential/Proprietary Information to service and manage these customer accounts effectively.

43.   Regions never authorized Luna, Crespo, or Simonian to retain, use, or disclose Region's Confidential/Proprietary Information outside the scope of their employment, for their own benefit, or for the benefit of a competitor.

44.   The Individual Defendants are prohibited from directly or indirectly soliciting, inducing, encouraging, or urging any of the customers that they serviced at Regions to change any aspect of their business relationship with Regions. That restriction includes terminating, cancelling, reducing, or limiting any business with the Bank.

45.   Since their resignations, Luna, Crespo, and Simonian have solicited, urged, induced, or encouraged Regions customers, through individualized contact, to transfer their accounts to Wells Fargo in direct violation of their *Agreements* with Regions.

46.   Regions heard directly from no fewer than **41** customers that Luna, Crespo, and Simonian have contacted them via telephone, mail, and even conducted in-person

9

meetings to discuss transferring their accounts and business from Regions to Wells Fargo.

47.   On December 9, 2020, a customer that Crespo serviced during his employment with Regions, a direct referral to Crespo from Regions' Ormond Beach branch office, indicated that Crespo contacted her via telephone following his resignation from Regions.  When the customer did not answer his call, Crespo sent her a large FedEx package containing regulatory disclosures and other information about transferring her assets from Regions to Wells Fargo.  The customer contacted Regions after receiving the solicitation package from Crespo and Wells Fargo.  The customer indicated to Regions that she was extremely upset that Crespo had taken her personal contact information and confidential information related to her accounts and investments to another financial institution (Wells Fargo) without her permission.

48.   Another customer that Crespo serviced during this employment with Regions called Regions on December 15, 2020 and indicated that she received an invitation to meet with Crespo at Wells Fargo Bank.  See Exhibit "**D**."

49.   On December 17, 2020, another customer that Crespo serviced during his employment with Regions indicated to Regions' employees that Crespo called her to provide his contact information at Wells Fargo and let her know that he handles the same types of investments that he did while he was working for Regions.  See Exhibit "**E**."

50.   From December 3, 2020 to December 9, 2020, several customers indicated to Regions that Luna solicited them via telephone and even met with them in person to discuss transferring their accounts from Regions to Wells Fargo.  Luna and Wells Fargo

also sent at least four customers FedEx solicitation packages.

51.    Regions also received information that Simonian contact Regions' customers in the Panama City/Beach market, a market Simonian only temporarily serviced due to the national pandemic, to solicit them to transfer their assets/accounts from Regions to Wells Fargo.

52.    Of the three advisors, Simonian has solicited and transferred the most accounts away from Regions, with eleven households transferring assets to Wells Fargo since December 11, 2020.

53.    Regions' customers have also informed its employees that Simonian contacted them via telephone to discuss transferring their accounts from Regions to Wells Fargo. Regions has also confirmed that Simonian also sent at least one customer a FedEx solicitation package.

54.    Customers have reported confusion concerning the FedEx solicitation packages they received in the mail from Luna, Crespo, Simonian and Wells Fargo.

55.    Several customers indicated to Regions employees that they believed Regions merged with Wells Fargo or had been bought out by Wells Fargo when they received the communications.  Any notion that Regions merged with Wells Fargo is entirely false.

56.    As the Individual Defendants remained in immediate and constant contact with Regions customers following their abrupt resignations, via telephone, email, and mail, it is clear that they retained and disclosed Regions' Confidential/Proprietary Information, including customer names, addresses, and other confidential information related to the accounts they serviced during their employment with Regions, in direct

violation of their *Agreements* with Regions.

57.     Because of Defendants' wrongful actions, Regions has lost customers to Wells Fargo and Regions has the potential of losing other high value accounts, which has and will continue to result in a substantial loss in annual revenue.

**C.     *Defendants Conspired to Unfairly Compete with Regions, to Solicit Regions' Customers, and to Misappropriate Regions' Confidential Information***

58.     Shortly after Luna, Crespo, and Simonian resigned from Regions and commenced employment with Wells Fargo, following a series of telephone calls received by Regions from concerned customers, Regions became aware that Luna, Crespo, and Simonian took confidential customer information with them to Wells Fargo and were using that information to solicit customers to transfer their accounts from Regions to Wells Fargo.

59.     Since their resignations, no fewer than **41** customers that Luna, Crespo, and Simonian serviced at Regions indicated to Regions branch employees that Defendants have contacted and solicited them to transfer their accounts from Regions to Wells Fargo.

60.     Based upon the mounting complaints from customers, Regions believes that, while still in the employ of Regions, Individual Defendants conspired to wrongfully convert Regions' Confidential/Proprietary Information and to secretly divert Regions' customers to Wells Fargo.

61.     Luna, Crespo, and Simonian solicited customers in a variety of ways, including contacting customers via their home and mobile telephone numbers, sending solicitation mailings to customers at their home addresses, and even arranged in-person meetings to solicit account transfers.

62.    Based on the variety of contact Luna, Crespo, and Simonian had with Regions' customers following their resignation, it is clear they retained Regions' Confidential/Proprietary Information, including its customer lists, customer account names, and customer contact information, in direct violation of their continuing contractual obligations to Regions.

63.    Individual Defendants converted for their own personal use and gain, Regions property, in the form of Regions' Confidential/Proprietary Information, the trade secrets of Regions, and the goodwill generated, directly and indirectly, by their association with Regions.

64.    The coordinated manner in which the Individual Defendants resigned from Regions and immediately began soliciting Regions' customers plainly shows that the Individual Defendants and their new employer, Wells Fargo, engaged a concerted and coordinated effort to cause immediate, ongoing, and lasting harm to Regions, damage its business operations in the greater Orlando market and beyond, and eliminate lawful competition.

**D.    *Regions Has Suffered, and Will Continue to Suffer, Irreparable Harm as a Result of Defendants' Unlawful Actions and it Requires Injunctive Relief and Other Remedies***

65.    As a direct and proximate result of Defendants' conduct, Regions has suffered, and will continue to suffer, significant irreparable harm, as well as incalculable economic injury and loss.

66.    It is impossible to calculate the potential harm to Regions knowing that Defendants seek to pirate nearly $142 million in customer assets that have generated over

$1,500,000 in annualized revenue for Regions.

67.     ***Importantly, Regions' relationship with these customers goes well beyond simple brokerage accounts.  Many of these customers utilize other Regions' services and products, including mortgages, commercial lending, checking and savings accounts, certificate of deposits, annuities, treasury services, real estate banking, small business banking services, and payroll.***

68.     ***Defendants' misconduct puts each of these multi-faceted banking and investment relationships at immediate and ongoing risk.***

69.     Despite repeated communications to the Individual Defendants and Wells Fargo concerning the Individual Defendants' post-employment restrictions and obligations owed to Regions, the Individual Defendants' solicitation of Regions' customers has continued without interruption.  See Exhibits "**F**," "**G**," and "**H**."

70.     Regions received numerous telephone calls from concerned customers indicating their frustration that the Individual Defendants' took their confidential information, including their contact information and information regarding their personal finances and accounts, and provided that confidential information to another Wells Fargo without their knowledge or permission.

71.     Regions has therefore lost customer goodwill and confidence due to Defendants' actions and continues to suffer the loss of its reputation in the Orlando market and beyond because of the same.

72.     Regions also experienced disruption to its internal business operations due to Individual Defendants' solicitation of bank referrals.

73.     As a result of Individual Defendants' misconduct, and the customers and assets that have transferred to Wells Fargo, Regions' retail banking partners now have concerns about  making customer referrals  to Regions' investment financial services, fearing that advisors will not honor their contracts and disclose customer and referral information to competitors upon their resignation.

74.     Indeed, the ongoing nature of Defendants' unlawful actions necessitates judicial intervention in the form of *status quo* injunctive relief to:

a.   Preclude Defendants from soliciting, inducing, urging, or encouraging Regions' customers to transfer their business; and

b.   Preclude Defendants from retaining, using, and/or disclosing Regions' Confidential/Proprietary Information, for their own benefit, or the benefit of others.

75.     In their respective *Agreements* with Luna, Crespo, and Simonian acknowledge their irreparable harm and expressly consent to injunctive relief, agreeing, *inter alia*, that:

> Remedy for Breach. Both parties recognize that the services to be rendered by Employee are of a special, unique and/or extraordinary character and that the breach or violation by Employee of the terms, conditions or provisions of this Agreement, including without limitation, those covenants of confidentiality and non-disclosure contained in Sections 7 and 9 and of non-solicitation contained in Section 10 and 11 above, will cause irreparable damages and injury to the Bank and its affiliate, and that money damages will not be adequate relief for such damages and injury. **Accordingly, in the event of Employee's breach or violation of any of the terms, conditions or provisions of this Agreement, including without limitations, those covenants of confidentiality and non-disclosure contained in Sections 7 and 9 and of non-solicitation contained in Sections 10 and 11 above, then Bank shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction to enforce the specific performance of this Agreement by Employee or to obtain injunctive relief (including, but not limited to, temporary restraining orders, preliminary injunctions and/or**

> **permanent injunctions), without the necessity of showing actual
> damage or furnishing a bond or other security**; provided, however,
> that nothing contained in this Agreement shall be construed as
> prohibiting Bank from pursuing any other remedy available to it for
> each breach, including the recovery of damages from Employee.
> Employee agrees that any failure on the part of the Bank to demand
> rigid adherence to one or more of the provisions of this Agreement, on
> one or more occasions, shall not be construed as a waiver, estoppel, or
> release, nor shall any such failure ever deprive the Bank of the right to
> insist upon strict compliance

See Exhibits "**A**," "**B**," and "**C**" at ¶ 12 (emphasis added).

76.    Further, in light of the significant financial losses incurred by virtue of

Defendants' actions (which are incalculable and ongoing at this time), Regions is entitled

to all remedies available under law and equity, including, but not limited to compensatory

damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an

amount to be proved, as well as any other remedies the Court deems appropriate.

**E.**     ***Regions is Entitled to Injunctive Relief as a Result of Defendants' Actions***

77.    By virtue of the foregoing, Regions has demonstrated a likelihood of success

on the merits of a claim for injunctive relief against Defendants and that a balancing of

the equities favors the issuance of such an injunction against Defendants.

78.    At this time, Regions has no adequate remedy at law.

79.    Luna, Crespo, and Simonian consented to injunctive relief in the event they

breached their *Agreements* with Regions.  See Exhibits "**A**," "**B**," and "**C**" at ¶ 12.

80.    Unless Defendants are preliminarily and permanently enjoined from the

foregoing conduct, Regions will be harmed by the disclosure of trade secrets, customer

information, and other confidential information that are solely the property of Regions

and its customers.

81.    The loss of the confidentiality of customer records and financial dealings, loss of confidence and trust of customers, loss of goodwill, and loss of business reputation will also substantially affect Regions standing in the marketplace.

82.    Additionally, the loss of personnel and damage to office stability in this already volatile time given the COVID-19 global pandemic place Regions in an even more perilous position.

83.    Furthermore, the present economic loss to Regions, which is unascertainable and ongoing at this time, and future economic loss, which is presently incalculable, present a significant risk to Regions and its business activities.

### COUNT I
### BREAD OF CONTRACT
### (<u>Luna, Crespo, and Simonian</u>)

84.    The allegations contained in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

85.    Luna, Crespo, and Simonian signed valid and enforceable *Agreements* with Regions.  These *Agreements* preclude Luna, Crespo, and Simonian from, among other things:

  a.   Soliciting, inducing, urging, or encouraging customers to terminate, cancel, reduce, or limit their business relations with the Bank or their brokerage, investment, or insurance accounts; and

  b.   Retaining, using, misappropriating, or disclosing Regions' Confidential/Proprietary Information.

86.    By virtue of the foregoing conduct, Luna, Crespo, and Simonian knowingly and willfully breached their *Agreements* with Regions and, as a direct and proximate cause of Individual Defendants' knowingly and willful breach of contract, Regions has

17

and will continue to suffer great economic injury and loss, all to the direct gain of

Defendants.

87.    As a direct and proximate result of Individual Defendants' wrongdoing,

Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against

Individual Defendants, as set forth in its Prayer for Relief.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*)**
**(<u>Luna, Crespo, and Simonian</u>)**

88.    The allegations contained in paragraphs 1-83 are incorporated herein by

reference with the same force and effect as if set forth in full below.

89.    Luna, Crespo, and Simonian misappropriated confidential customer

information in violation of the Florida Uniform Trade Secrets Act (FUTSA), Fla. Stat.

§ 688.001 *et seq.*[1]

90.    At all times material hereto, Luna, Crespo, and Simonian knew, or should

have known, that Region's Confidential Information deserves trade secret protection

under the Florida Trade Secrets Act inasmuch as:

a.    Regions invested substantial resources to create, develop, compile, and

---

[1] The Individual Defendants also violated the Alabama Trade Secrets Act ("ATSA"), which provides elements to establish a claim for trade secret misappropriation.  <u>See</u> Ala. Code §§ 8-27-1 *et seq.*  The ATSA states that a person who, without privilege to do so, uses or discloses another person's trade secret is liable for misappropriation if: (1) he discovered the trade secret by improper means; (2) his use or disclosure constitutes a breach of confidence; (2) he learned the trade secret from a third person and knew or should have known that (a) the information was a trade secret and (b) the trade secret was appropriate by improper means or through a breach of confidence; or (4) he learned the information, and knew or should have known that the information was (a) a trade secret and (b) disclosed by mistake.  <u>See</u> Ala. Code § 8-27-3.

maintain this information;

b.   The information is not known outside of Regions;

c.   Regions takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring its employees to execute confidentiality agreements and other restrictive covenants;

d.   The information cannot be replicated, compiled, or recreated by a competitor without substantial time, effort, and expense and is not generally attainable by proper means by the public or any other person who can derive commercial or economic value from its disclosure or use; and

e.   Regions' Confidential Information is of significant independent economic value to Regions and is extremely important in the conduct of its business, and would be extremely valuable to Wells Fargo, a competitor.

91.   Regions disclosed its Confidential Information to Luna, Crespo, and Simonian while they were in positions of trust and confidence and under circumstances that make it inequitable and unjust for them to have misappropriated the materials and to be using them for their own benefit and for the benefit of Wells Fargo.

92.   Luna, Crespo, and Simonian secured Regions Confidential Information by improper means sufficient to constitute misappropriation under Fla. Stat. § 688.002(2).[2]

93.   Conduct in violation of the Florida Uniform Trade Secrets Act may be enjoined under Fla. Stat. § 688.003.[3]

---

[2] See also Ala. Code § 8-27-3, which Individual Defendants also violated.

[3] The ATSA provides for similar relief under § 8-27-4 ("The remedies available… for actual or threatened trade secret misappropriate are: (1) injunctive and other equitable relief."). See Ala. Code § 8-27-4.

94.     Because of the willful nature of the violation, Regions is also entitled to exemplary damages as allowed Fla. Stat. § 688.004(2).[4]

95.     In the alternative, if Regions' Confidential Information does not constitute trade secrets within the meaning of FUTSA (and it does), Luna, Crespo, and Simonian are nonetheless liable for the wrongful conversion of such proprietary materials.

96.     As a direct and proximate result of the Individual Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against the Individual Defendants, as set forth in its Prayer for Relief.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)**
**(<u>Luna, Crespo, and Simonian</u>)**

97.     The allegations contained in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

98.     While employed by Regions, Luna, Crespo, and Simonian obtained access to Regions' confidential trade secret information, including, *inter alia*, customer contact, financial, and account information, in both physical and electronic form, including the names, addresses, and phone numbers of Regions customers.

99.     Such information is protected as "non-public" information under federal securities regulation S-P. 17 C.F.R. § 248(t)(1); 17 C.F.R. § 248.3(u).  Accordingly,

---

[4] <u>See</u> Ala. Code § 8-27-4 ("The remedies available… for actual or threatened trade secret misappropriate are: (4) exemplary damages for willful and malicious misappropriation, which cannot exceed the monetary damages aware or be less than $10,000.").

Regions is required by federal law to ensure that non-public customer contact, financial, and account information such as that misappropriated by Luna, Crespo, and Simonian is not disclosed to third parties (such as Wells Fargo) without consent.  See 17 C.F.R. § 248.10.

100.  These trade secrets directly relate to products and services used in, or intended for use in, interstate and foreign commerce.

101.  Regions derives significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

102.  As expressly acknowledged in Individual Defendants' *Agreements*, Regions considers this type of information to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

103.  Upon their resignation from Regions, Luna, Crespo, and Simonian secured and retained Regions' confidential customer information by improper means and in breach of their contractual and legal duties sufficient to constitute misappropriation under 18 U.S.C. § 1836 *et seq.*

104.  Upon information and belief, Luna, Crespo, and Simonian communicated Regions' confidential information and trade secrets to Wells Fargo, which has misappropriated and misused the information for its own financial gain.

105.  As a proximate result of the misappropriation as set forth herein, Regions has suffered actual damages in the nature of lost business.

106.  The Individual Defendants' actions in converting and misappropriating

Regions' confidential, proprietary and trade secret information for their own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of Regions.

107. The Individual Defendants' actions have caused and will continue to cause Regions irreparable harm if not preliminarily and permanently enjoined.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT IV
## UNFAIR COMPETITION
### (All Defendants)

108. The allegations contained in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

109. Upon information and belief, Luna, Crespo, and Simonian, acting in concert with, at the direction of, and/or for the benefit of, Wells Fargo, and using Region's Confidential Information, directly, intentionally, and improperly conspired to solicit and induce Region's customers to transfer their accounts to Wells Fargo, a direct competitor.

110. At all times material and by virtue of their roles with Regions, Defendants knew or should have known that this unfair and unlawful practice would result in significant irreparable injury to Regions.

111. Defendants took these steps with the intention of, and for the purpose of, *inter alia*, (1) causing harm to Regions and (2) using, misappropriating, and/or converting Regions' Confidential Information.

112. Defendants' foregoing conduct constitutes unfair methods of competition.

22

113.  Defendants' above-described actions are the direct and proximate cause of immediate and irreparable harm to Regions.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

### COUNT V
### UNJUST ENRICHMENT
### (<u>All Defendants</u>)

114.  The allegations contained in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

115.  In the scope of their employment, Regions conferred the benefit of its Confidential/Proprietary Information on Individual Defendants.

116.  Individual Defendants utilized the aforementioned benefits to excel in their respective roles with Regions, resulting in significant financial rewards for each.

117.  Upon information and belief, Individual Defendants have, without authorization, retained and utilized Regions' Confidential/Proprietary Information after the end of their employment and continue to use said Confidential/Proprietary Information for their own direct benefit and Regions detriment.

118.  Furthermore, upon information and belief, at the direction or knowledge of Wells Fargo, Luna, Crespo, and Simonian disclosed Regions' Confidential/Proprietary Information to Wells Fargo, and/or used Regions Confidential/Proprietary Information for the direct benefit of Wells Fargo (*e.g.*, to induce Regions' customers to transfer their accounts and business to Wells Fargo).

119.  Therefore, Luna, Crespo, and Simonian furthered their own interests, as well

as the interests of Wells Fargo, a direct competitor. Consequently, Defendants have knowingly benefitted by the foregoing conduct and it would be unjust for Defendants to retain said benefits without consideration to Regions.

120.  As a direct and proximate result of the foregoing, Regions has suffered, and will continue to suffer, great injury and loss, all to the direct gain of Defendants.

121.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor and against Defendants, as set forth in its Prayer for relief.

### COUNT VI
### TORTIOUS INTERERENCE WITH BUSINESS RELATIONS
### (All Defendants)

122.  The allegations contained in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

123.  Wells Fargo knowingly and intentionally interfered with Individual Defendants' contractual relationships with Regions regarding their obligation, among others, not to solicit Regions' customers.

124.  Defendants knowingly and willfully interfered with, and continue to interfere with, the relationship between Regions and its customers by soliciting these customers to transfer their accounts and business to Wells Fargo.

125.  Defendants were and are fully aware that the solicited Regions' customers share an advantageous business relationship with Regions and that Regions relied on such arrangements for its financial prosperity.

126.  At all times material hereto, Defendants were aware that the foregoing actions were in direct violation of the Individual Defendant's Agreements with Regions, as well as their fiduciary duties and duties of loyalty.

127.  As a direct and proximate result of the foregoing, Regions has suffered and will continue to suffer, great injury and loss, all to the direct gain of Defendants.

128.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT VII
## CIVIL CONSPIRACY
### (All Defendants)

129.  The allegations in paragraphs 1-83 are incorporated herein by reference with the same force and effect as if set forth in full below.

130.  The Individual Defendants and Wells Fargo agreed and conspired to engaged in unlawful trade practices and unfair competition, all to the detriment of Regions, and to eliminate lawful competition.

131.  The aforementioned conspiracy was further by Defendants' unlawful conduct as described herein.

132.  As a direct and proximate result of the foregoing, Regions suffered, and will continue to suffer, great economic injury and loss, all to the direct gain of Defendants.

133.  As a direct and proximate result of Defendants' wrongdoing, Regions is suffering immediate and irreparable harm.

WHEREFORE, Regions respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Regions Bank respectfully requests that, due to the ongoing, and unlawful acts of Defendants, the Court:

a.     Restrain and ultimately enjoin Luna, Crespo, Simonian, and anyone acting in concert with them, from using or disclosing all such Confidential/Proprietary Information, including, but not limited to, customer lists, customer information, customer identities, customer personal data and contact information, nonpublic and/or confidential customer information, customer account information and balances, customer investment and financial preferences, and trade secrets; AND

b.     Compel Luna, Crespo, and Simonian, and anyone acting in concert with them, to immediately return to Regions all of its Confidential/Proprietary Information, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, AND

c.     Compel Luna, Crespo, and Simonian to surrender any their electronic devices, including, but not limited to, their personal mobile telephones, laptops, and tablets for the purpose of permanently erasing all Regions' Confidential/Proprietary Information; AND

d.     Restrain and ultimately enjoin Luna, Crespo, Simonian, and anyone acting in concert with them, from using or disclosing all such Confidential/Proprietary Information, including, but not limited to, customer lists, customer information, customer

26

identities, customer personal data and contact information, nonpublic and/or confidential customer information, customer account information and balances, customer investment and financial preferences, and trade secrets; AND

e.      Preliminarily and permanently enjoin Luna, Crespo, Simonian, and anyone acting in concert with them, for a period of one year, from soliciting, inducing, seeking to induce, or otherwise urging or encouraging any customer to terminate, cancel, reduce, or limit their business relationship with Regions or to establish a similar relationship with them, or Wells Fargo; AND

f.      Preliminarily and permanently enjoin Defendants, and anyone acting in concert with them, for a period of one year, from recruiting or soliciting any Regions employee to resign from Regions or to join them or their new employer, Wells Fargo.

**g.**      Regions further prays the Court will award Regions compensatory damages, punitive damages, statutory damages, costs of suit, and attorney's fees in an amount to be proven, as well as any other remedies the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiff requests that this matter be heard by a jury for all matters so triable.

Respectfully submitted,

Dated: 12/21/2020

By:   ___/s_____
Lyle E. Shapiro
Florida Bar No. 120324
**HERSKOWITZ SHAPIRO, PLLC**
Two Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, FL 33156
Telephone: (305) 423-1986
Facsimile: (305) 670-3884
E-mail: lyle@hslawfl.com

*Attorney for Plaintiff Regions Bank*

and

Michael J. Fortunato, Esquire
Edward J. Heffernan, Esquire
Nora L. Olsewski, Esquire
**RUBIN, FORTUNATO & HARBISON, P.C.**
10 South Leopard Road
Paoli, PA  19301
(610) 610-408-2005/2021/2052 (Telephone)
(610) 854-4305/1869/4304 (Facsimile)
*Pro Hac Vice Motion to be filed*
*Attorney for Plaintiff Regions Bank*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

REGIONS BANK,

    Plaintiff,

    v.

DANIEL ENRIQUE LUNA,
RENE JOSE CRESPO
MICHAEL WILLIAM SIMONIAN, and
WELLS FARGO CLEARING SERVICES, LLC
d/b/a WELLS FARGO ADVISORS

    Defendants.

CASE NO._____
JURY TRIAL DEMANDED

## **VERIFICATION**

   I, Deena Espinosa, verify that the forgoing Verified Complaint is true and correct

to the best of my knowledge, information, and belief, and to the extent based upon

information received from others, I believe them to be true and correct. I understand that

this Verification is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn

falsification to authorities.

_Deena Espinosa_
Deena Espinosa