UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| REGIONS BANK,<br><br>            Plaintiff,<br><br>v.<br><br>DANIEL E. LUNA, RENE JOSE CRESPO-OROZCO, MICHAEL W. SIMONIAN, and WELLS FARGO CLEARING SERVICES, LLC d/b/a WELLS FARGO ADVISORS<br><br>            Defendants. | CASE NO.: 6:20-cv-02335-RBD-DCI<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Defendants Daniel E. Luna ("Luna"), Rene Jose Crespo-Orozco ("Crespo"), Michael W. Simonian ("Simonian") (collectively referred to as the "Individual Defendants") and Wells Fargo Clearing Services, LLC ("Wells Fargo") (all together "Defendants") respectfully submit this Brief in Opposition to Plaintiff Regions Bank's ("Regions") Amended Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 13).

## INTRODUCTION

In a time of market volatility, a client's inability to consult a trusted advisor could result in enormous financial losses. This danger outweighs any injury [Regions] might suffer due to the disloyalty of two former employees. Thus the issuance of a preliminary injunction could actively obstruct the public interest. [1]

Regions instituted this litigation nearly a month after the Individual Defendants resigned their positions as registered Financial Advisors[2] to accept new employment with Wells Fargo.

---

[1] Regions Bank v. Raymond James & Associates, Inc., Michael Montalvo and Mauricio Ricardo Carenas, 6:20-cv-658-Orl-40EJK, 2020 WL 6870815, at *6 (M.D. Fla. May 15, 2020).

[2] The Individual Defendants were, at all times, dual employees of Regions and Cetera Investment Services, LLC ("Cetera"). Cetera is a brokerage firm regulated by the Financial Industry Regulatory Authority ("FINRA") and the Securities and Exchange Commission. Regions affiliated with Cetera to provide securities brokerage and/or insurance sales services to clients. The Individual Defendants were registered with FINRA as Cetera's "registered representatives". Their securities licenses and registrations then transferred to Wells Fargo, which is regulated by

Defendants submit that Regions filed this action to punish the Individual Defendants and send a message to other Regions employees who may be contemplating new employment. Unfortunately, Regions' actions negatively affect the Defendants' clients – innocent third parties who are now being denied the ability to work with a financial advisor of their own choosing.[3]

Regions' demands for a temporary restraining order and, now, a preliminary injunction are improper. Injunctive relief is an extreme remedy. A movant must establish, *inter alia*, that it will suffer immediate and irreparable harm now and in the future if the opposing party is not enjoined. Regions knows that it cannot satisfy this demanding burden. In fact, this Federal District Court denied Regions injunctive relief earlier this year in *Regions Bank v. Raymond James & Associates, Inc., Michael Montalvo and Mauricio Ricardo Carenas*, 6:20-cv-658-Orl-40EJK. There, like here, Regions sought to enjoin a team of its former Financial Advisors who it alleged were using misappropriated client information to improperly solicit customers.

In denying injunctive relief to Regions[4], the Honorable Paul G. Byron, U.S.D.J. found multiple deficiencies in Regions' claims and arguments. Among those were Regions' inability to demonstrate that: (i) the at-issue client contact information was "confidential"; (ii) defendants' contact with clients was a "solicitation" not an announcement; and (iii) that it would suffer irreparable harm as "[v]irtually all of the potential injuries caused by [d]efendants' alleged

---

FINRA. As FINRA members, Cetera, the Individual Defendants, and Wells Fargo are all required to adhere to FINRA's rules, regulations and other standards of conduct.

[3] Regions claims it "is not seeking to prevent customers from *independently* transferring their business". See Motion p. 25. This, however, conflicts with Regions' argument that it was improper for the Individual Defendants to announce their new employment. The Individual Defendants should be allowed to announce their change of employment if Regions wants clients to have free choice.

[4] Judge Byron granted a temporary restraining order, but stayed the injunction after determining that Regions "misrepresented or failed to disclose at least three material facts, which if revealed, would have led [the] Court to deny injunctive relief, at least while it awaited an opposition from Defendants. Judge Byron's April 23, 2020 Order is attached hereto as Exhibit D.

misconduct are compensable through monetary damages." See <u>Regions Bank v. Raymond James & Associates, Inc.</u>, 2020 WL 6870815, at *5 (May 15, 2020). Finally, Judge Byron stated that he was "reluctant" to issue any injunction because the "danger" of restricting communications between a financial advisor and his client in today's financial climate "outweighs any injury Plaintiff might suffer due to the disloyalty of two former employees. Thus, issuance of a preliminary injunction could actively obstruct the public interest." <u>Id.</u> at *6.

Defendants appreciate that each case is different. However, Judge Byron observed that Regions cannot demonstrate an "irreparable" harm existed in that case. Judge Byron also had legitimate concerns that an injunction will harm the public interest, particularly customers who rely on their chosen financial advisors for advice. For these reasons, and the additional reasons discussed below, Defendants ask the Court to release them from the restraints set out in the Court's December 29, 2020 Order, and to issue a new Order denying Regions' demand for a preliminary injunction.

## FACTUAL BACKGROUND

Defendants respectfully refer the Court to the Individual Defendants' Affidavits submitted herewith. <u>See</u> Exhibits A - C.

### REGIONS HAS NOT AND CANNOT DEMONSTRATE THAT A PRELIMINARY INJUNCTION IS WARRANTED IN THIS CASE

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." <u>Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.</u>, 320 F.3d 1205, 1210 (11th Cir. 2003). A movant must show: (i) a substantial likelihood of success on the merits of the underlying case; (ii) irreparable injury in the absence of the requested injunction; (iii) a threated

injury that exceeds any injury to the non-moving party caused by the injunction; and (iv) that an injunction will not disserve the public interest. See, e.g., Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc., 299 F.3d 1242, 1246–47 (11th Cir. 2002). Additionally, a movant must establish a continued and future threat of harm as "[t]he sole function of an action for injunction is to forestall future violations […] it cannot serve as a sanction for past conduct that may be addressed by adequate remedies at law." Viable Res., Inc. v. Belya, 2016 WL 7334285, at *2 (M.D. Fla. Dec. 1, 2016), *report and recommendation adopted*, 2016 WL 7326877 (M.D. Fla. Dec. 16, 2016) and *report and recommendation adopted*, 2016 WL 7335485 (M.D. Fla. Dec. 16, 2016).

    I.    <u>Regions Has Not Demonstrated Substantial Likelihood of Success on the Merits</u>.

Regions' causes of action fall into two categories: claims sounding in breach of contract; and claims for misappropriation and misuse of trade secrets. <u>See</u> Amended Motion, pp. 14-17. As discussed below, Regions cannot establish any likelihood – let alone substantial likelihood – of success because <u>all</u> of its claims are barred by controlling, established law and precedent.

    A.  *The covenants are not enforceable under Alabama law.*

Related to its breach of contract claims, Regions seeks to enforce non-disclosure[5] and customer non-solicitation restrictions contained in the Individual Defendants' respective Financial Consultant Employment Agreements (the "Agreements").[6] To do so, Regions asks the

---

[5] To the extent the non-disclosure covenants relates to customer contact information the Individual Defendants purportedly "misappropriated", the merit of Regions' claim is addressed below in Section B and C.

[6] Regions attached purported copies of the Agreements to its Verified Complaint as Documents 1-1, 1-2, and 1-3. For purposes of this Opposition only, Defendants accept that the attachments are true and correct copies of the referenced documents.

Court to apply Alabama law and, in particular, the Alabama Restrictive Covenant Act ("ARCA"), Ala. Code § 8-1-190, *et seq*.

Alabama has a long history of disfavoring non-solicit restrictions like those contained in the at-issue Agreements.  See, e.g., Burkett v. Adams, 361 So. 2d 1, 2 (Ala. 1978) ("It is well settled that contracts in restraint of trade are looked upon with disfavor.")  As in Florida, such restrictions should only be enforced to the extent that it is reasonably necessary to protect an employer's legitimate interest.  However, Alabama differs from Florida in a very fundamental and important way:  ***Alabama's statute absolutely bars restraints on the exercise of a profession***.  See, e.g., Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765, 767-68 (Ala. 1996); Salisbury v. Semple, 565 So.2d 234, 236 (Ala. 1990); Mann v. Cherry, Bekaert & Hollad, 414 So.2d 921, 924 (Ala. 1982).

To determine whether an employee qualifies as a "professional", the Alabama Supreme Court considers:  (1) professional training, skill, and experience required, to perform certain services; (2) the delicate nature of the services offered; and (3) the ability and need to make instantaneous decisions.  See Odess v. Taylor, 211 So.2d 805 (Ala. 1968).  Applying this test, at least one Alabama court has found a FINRA registered securities representative to be a "professional".  See G.L.S. & Associates v. Rogers, CV-2013-901207.00 (Cir. Crt. Madison County, Aug. 21, 2013) (granting motion to dismiss)[7], *reversed and remanded*, 155 So. 3d 263 (2014) (finding trial court improperly took judicial notice of facts not in evidence when dismissing the action).

---

[7] A copy of the Circuit Court's decision is attached as Ex. E hereto.

The Individual Defendants respectfully submit that they are "professionals" for purposes of the ARCA. Securities are not an ordinary good sold in the marketplace; rather, they are highly regulated at both the state and federal level. The Individual Defendants needed to obtain various federal and state licenses before they could buy and sell securities to clients. See Paragraphs 2-4 in Exhibits A, B and C. Because of their licensing, the Individual Defendants must know and comply with various laws, rules, and regulations concerning, inter alia, the industry, their duties to clients, and their standards of conduct. Id. A client's financial assets are often very private and personal. Id. Clients put their trust in the hands of a professional who they expect to adeptly and instantly respond to changes in the financial markets.[8]

However, it is not the Individual Defendants burden to establish they are professionals. Rather, it is Regions' burden of proof to establish that they are not professionals and that the at-issue Agreements can be enforced under the ARCA. See Dean Witter Reynolds, Inc. v Gregory, 2000 WL 36689840 (M.D. Ala. March 17, 2000) (denying plaintiff's application for a temporary restraining order because "there is at the very least a substantial possibility that the Alabama courts would conclude that a stock broker is a professional within the meaning of the statute" and, as such, plaintiff needed to "demonstrate that a stock broker is not a professional" to obtain injunctive relief). Regions has not and cannot satisfy its burden of proof.

For these reasons, Regions has not met its burden of showing a likelihood of success on the merits of its breach of contract claim.

---

[8] The Individual Defendants' former manager, Deena J. Espinosa, Senior Vice President and Area Investment Executive for Regions, establishes that these advisors are professionals in the Affidavit she submitted in support of Regions' Motion. See Affidavit of Deena J. Espinosa at ¶¶ 11-13.

B. *Customer identities are, by themselves, not trade secrets and there is no evidence the Individual Defendants misappropriated other trade secrets.*

Regions likewise cannot establish a substantial likelihood of success on its claim that Defendants misappropriated and/or misused trade secrets. Both the Defend Trade Secrets Act and Florida's Uniform Trade Secrets Act define a "trade secret" as something that (i) "derives independent economic value from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain value from its disclosure or use"; and (ii) is the subject of "efforts that are reasonable under the circumstances to maintain its secrecy". See 18 U.S.C. § 1839 and Fla. Stat. § 688.002(4). Regions must satisfy both prongs. See American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998) ("[T]he plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect [its] secrecy.")

To date, Regions has not identified any specific documents or other information that the Individual Defendants misappropriated. Instead, Regions makes bald allegations "on information and belief" or claims based on conjecture. For example, Regions speculates that the Individual Defendants retained client names, addresses and other contact information solely because the Individual Defendants announced their new employment to their clients. See, e.g., Verified Complaint at ¶ 56 (alleging "it is clear that [the Individual Defendants] retained and disclosed confidential information" given the alleged speed at which they announced their resignations). The absence of any specific evidence or proof is fatal to Regions' claims.

Here, the Individual Defendants have attested they did not take any client records or information. See Exhibits A (¶¶ 12-13), B (¶¶10-12), and C (¶¶ 10-12). They used their memory and publicly available sources to obtain contact information for a limited number of their clients

*after* they resigned from Regions.  See Exhibits A (¶ 17), B (¶ 15), and C (¶17).  This is entirely permissible under Florida law.  See, e.g., Fifth Third Bank v. Barkauskas, 2012 WL 5844998, at *3 (M.D. Fla. Nov. 19, 2012) (denying preliminary injunction where plaintiff presented no evidence to dispute defendants' attestations they "did not remove customer contact information and were able to dial some clients' phone numbers from memory, returned calls to clients who called defendants first, found clients' numbers from public sources, and reached others from numbers stored in their personal cell phones.); see also The Variable Annuity Life Ins. Co. v. Laeng, No. 8:12-cv-2280-T-33MAP, 2013 WL 499982, at *4 (M.D. Fla. Jan. 2, 2013) (financial advisor permitted to "utilize" contacts, memory and public sources to contact former clients after resignation and plaintiff failed to present any evidence to establish defendant retained customer information); American Red Cross, supra, (plaintiff could not prevent its former employer from relying on professional relationships developed during employment); Blackstone, D.O., P.A., v. Dade City Osteopathic Clinic, 511 So.2d 1050 (Fla 2d DCA 1987) (lists compiled from patients, phone book and memory are not trade secrets); Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989) (finding that a former employee cannot be prohibited from using contacts and expertise gained from former employment); Pure Foods, Inc. v. Sir Sirloin, Inc., 84 So.2d 51 (Fla. 1955) (same).

Regions cannot, or at least should not, object to the Individual Defendants use of their memory and public sources to announce their new employment positions to their clients.  This is the *same method that Region uses* when it hires advisors from other firms.  In fact, the Individual Defendants' former manager, Deena Espinosa, directed a new advisor she hired in October 2020 to contact to as many of her former clients as possible to move their accounts to Regions.  See

Exhibit B, ¶ 19.  Ms. Espinosa gave this instruction despite knowing the advisor owed post-employment obligations to her former employer.  See Id.

Ironically, the declarations submitted in Regions v. Raymond James & Associates, LLC, supra, confirm that Regions' used this practice when hiring advisors who had worked at Wells Fargo Advisors:

> When I joined Regions, I recalled client names from memory and used publicly available resources to locate contact information to contact clients and let them know that I was now working at Regions.  Regions blessed this practice.  Regions did not view this public information as Wells Fargo's confidential information, likely because it was publicly available.  Nor did Regions view my creation of a list of Well Fargo clients from my memory as confidential information belonging to Wells Fargo.

See Declaration of Michael Montalvo filed as Document 15-1 in Raymond James & Associates, LLC, supra.[9]  Accordingly, Regions comes to this Court with "unclean hands" and, as a result, is barred from obtaining injunctive relief.  See, e.g., Bradley v. Health Coal, Inc., 687 So. 2d 329, 334 (Fla. Dist. Ct. App. 1997) (reversing lower court decision granting temporary injunction against defendant because, among other errors, the trial court prevented the defendant from presenting evidence that he was constructively discharged and, therefore, the plaintiff had "unclean hands")(citing *Pilafian v. Cherry,* 355 So.2d 847, 849 (Fla. 3d DCA), ("One who seeks the aid of equity must do so with clean hands."), *cert. denied,* 361 So.2d 834 (Fla.1978)).

Finally, Regions cannot show that it made reasonable efforts to maintain the secrecy of its purported "trade secret" client information.  It has a documented history of allowing other departing employees to take and retain client information.  See, e.g., Regions Bank v. Allen, No. 8:19-CV-2182 (M.D. Fla. 2019) (failing to seek return of client names and financial information

---

[9] A true and correct copy is attached hereto for the Court's convenience as Exhibit F.

allegedly in possession of defendant; Regions Bank v. Thompson, et al., No. 3:18-CV-00666 (W.D. N.C. 2018) (failing to seek the return of notes and files that allegedly containing customer information that Regions believed were in defendants possession). By failing to properly protect and secure its customer information, Regions has abandoned its right to claim that the client information is a trade secret. See Belya, supra, at *5 (denying preliminary injunction where, *inter alia*, plaintiff failed to prove it took adequate steps to protect information given that it selectively enforced its employees' non-solicit covenants).

      C. *The Individual Defendants announced their new employment, they did not solicit clients to move their accounts.*

Regions has, to date, failed to present any factual support for its claim that the Individual Defendants improperly "solicited" customers after they joined Wells Fargo. This is not surprising because the Individual Defendants never solicited, encouraged or otherwise induced clients to leave Regions. However, as explained in their Affidavits, the Individual Defendants announced their new employment with Wells Fargo. In the context of the financial services industry, announcements serve a critical function: they provide clients with up-to-date contact information for their financial advisors – particularly important during the COVID restrictions. As the district court in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618 (N.D. Ill. 2000) noted:

> It would be unlawful, as well as unreasonable, for Merrill Lynch to seek to prohibit O'Connor from giving his former customers an announcement of his intent to move to other employment and notice where he could be reached should the customer wish to contact him…otherwise customers with longstanding trust in their brokers with immediate need of advice would not be able to contact them.

Id. at 620.  This reasoning is equally applicable here.  Clients have a right to work with a financial advisor they select, and they need to know when their advisor changes firms.  This notice is a professional and personal courtesy.

Even if the non-solicit covenants in the Agreements were enforceable under Alabama law, which they are not, the Individual Defendants could still announce their new positions to clients.  Under the Agreements, the Individual Defendants cannot "solicit, induce, seek to induce or otherwise urge or encourage any Customer to terminate, cancel, reduce, or limit their business relationship" with Regions.  See Verified Complaint at ¶ 35.  The Agreements do not prevent the Individual Defendants from contacting, announcing, and otherwise communicating with their customers.  This is an important distinction.  Regions drafted the Agreements.  It controlled the contractual language.  Regions could have included language preventing the Individual Defendants from contacting, announcing, and otherwise communicating with their customers.

Unlike Regions, courts have long recognized a distinction between announcements and solicitations.  See, e.g., Aetna Bldg. Maintenance Co. v. West, 246 P. 2d 11, 15 (Cal. 1952) (noting the Black's Law Dictionary definition of "solicit" as "[t]o ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite" in holding that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation."); American Credit Indemnity Co. v. Sacks, 262 Cal. Rptr. 92, 99-100 (Cal. Ct. App. 1989) ("[a]t common law, the boundary separating fair and unfair competition in the context of a protected customer list has been drawn at the distinction between an announcement and a solicitation" and "the right to announce a new affiliation, even

11

to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition").

Federal and state courts in Florida also recognize this dichotomy and uphold a former employee's right to announce his or her new employment to customers.  See, e.g., Centennial Bank v. ServisFirst Bank, Inc., No. 8:16-cv-88-T-36JSS, 2016 WL 7325545, at *11 (M.D. Fla. May 17, 2016) (departing employee's email informing clients of his last day, that his phone number remained unchanged, and to "stay tuned" was a permissible announcement); Charles Schwab & Co. Inc. v. Nicholas Carr, et. al., No. 2:11-cv-00184-36DNF, (N.D. Fla. May 17, 2011) (defendants' emails to clients "merely constituted an announcement email of their departure from the employer" and did not violate the non-solicitation clause in their employment agreements because there was no evidence defendants intended to divert plaintiff's business); Neuberger Berman, LLC v. Strochak, Case No. 05-80112 (S.D. Fla. Feb 22, 2005) (finding a financial planner merely announcing that he has joined a new firm does not, in and of itself, constitute impermissible solicitation) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 620 (N.D. Ill. 2000) ("It would be unlawful, as well as unreasonable, for Merrill Lynch to seek to prohibit [defendant] from giving his former customers an announcement of his intent to move to other employment and notice where he should be reached should the customers wish to contact him.")).

Despite this controlling law, Regions now alleges that Defendants' announcements must be considered solicitations because the Individual Defendants "targeted" specific clients with telephone calls and otherwise mailed clients packets containing an "Educational Communication" addressing account transfers.  See Amended Motion, pp. 16-17.  FINRA

12

created and mandated this document. Regions wrongly alleges that the communication is "triggered only after a registered representative has individualized contact about transferring assets". Id. However, FINRA's guidance makes clear that there a number of reasons why/when a FINRA member must send the communication to clients. Relevant here, FINRA requires the notice to be sent when a financial advisor "inform[s] the former customer that he or she is now associated with" a new firm. See FINRA Regulatory Notice 16-18, attached hereto as Exhibit G; see also 81 FR 17513-02, 17514. Defendants complied with FINRA guidance.

Regions' suggestion that this Court should rely on the required disclosures as evidence of "solicitation" is similarly misplaced. The Rule 2273 Educational Communication is not a solicitation in and of itself, and its transmission to a client is in no way relevant to determining whether a member has violated a restrictive covenant. As to these points, FINRA has stated:

> that it does not intend the proposed rule to impact any contractual agreement between a representative and his or her former firm or new firm and does not require members to disclose information in a manner inconsistent with Regulation S-P. FINRA notes that the proposed rule change assumes that recruiting firms and representatives will act in accordance with the contractual obligations established in employment contracts, state law, and, if applicable, the Protocol. Furthermore, in its response to commenters, FINRA states that it does not intend for the provision of the educational communication to have any relevance to a determination of whether a representative impermissibly solicited a former customer in breach of a contractual obligation. FINRA does not believe it is necessary or appropriate to include any statement regarding solicitation in the educational communication, which by itself and its own terms cannot reasonably be considered to encourage or discourage the transfer of assets.

81 FR 17513-02, 17518.

    II.    There is No Threat of Irreparable Harm.

Before a court may issue a preliminary injunction, the movant must show that irreparable harm is not merely possible, but likely. See Alabama v. U.S. Army Corp. of Eng'rs, 424 F.3d

1117, 1131 (11th Cir. 2005). An injury is "irreparable" only if it cannot be undone through monetary remedies. "The possibility that adequate compensatory relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

Regions' damages, if any, can adequately be redressed with money damages. Regions records every transaction and can easily quantify the amount of fees, commissions or other revenues it receives from clients.[10] Such exacting records are required by governmental regulators and have become a distinguishing feature of the banking and financial services industries. Because of this, it is now widely accepted that "losses" caused by a financial advisor changing firms do not rise to the level of immediate and *irreparable* harm needed to support a demand for a temporary restraining order.[11] For example, in Morgan Stanley Dean Witter, Inc. v. Frisby, 163 F. Supp. 2d 1371 (N.D. Ga. 2001), the court denied injunctive relief to the plaintiff, because:

> [t]he securities industry is highly regulated. Each individual transaction is monitored electronically. Every customer transfer from Morgan Stanley is documented. Every executed trade is recorded. Every dollar earned in fees by Defendants doing

---

[10] Regions makes very specific allegations regarding (i) the number of accounts the Individual Defendants serviced, (ii) the amount of assets they managed, and (iii) the revenue generated from the accounts. See Verified Complaint, ¶¶ 19-21 (representing to the Court that the Individual Advisors, together, managed assets totaling $141,920,912 for some 1,244 accounts that generate $1,517,790 in revenue for Regions). Regions also alleges that "27 customers have transferred their accounts and relationships" totaling "over $3,104,000 in assets under Regions' management." See Verified Complaint, ¶ 32. Regions, therefore, can easily and accurately determine the amount of revenue it "losses" when a client leaves Regions. It is disingenuous for Regions to suggest it will suffer "irreparable harm".

[11] This reasoning has been applied by courts throughout the country, including Florida. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Baxter, 2009 WL 960773 at *5 (D. Utah April 8, 2009) ("This court agrees that Merrill Lynch's damages from lost commissions are calculable monetary damages. These types of damages do not provide the basis for injunctive relief."); First Miami Sec., Inc. v. Bell, 785 So.2d 1229 (Fla. Dist. Ct. App. 2000) (holding the extent and detail of record keeping in the financial services industry makes damages readily calculable and rebuts even a statutory presumption of irreparable harm). See Smith Barney v. Burrow, 558 F. Supp. 2d 1066, 1083 (E.D. Cal. 2008) (denying Smith Barney's request for a temporary restraining order based on the court held that "courts have become disinclined to find irreparable, incalculable harm from financial advisor's departures.").

> business with those customers that Morgan Stanley considers its own can be traced precisely. Any loss Morgan Stanley might suffer as a result of Defendants' departure is calculable.

Id. at 1375-76 (also finding that the requested injunction would harm the public's interest).

Regions' claim that its alleged damages constitute "irreparable" harm is particularly confusing given the holding in Regions Bank v. Raymond James & Associates, Inc., supra, a case decided less than seven (7) months before Regions instituted that action. There, like here, Regions alleged it would suffer lost business revenues and other intangibles such as diminished customer goodwill, reduced office instability, and the weakening of its competitive advantage. See Amended Motion p. 21. Speaking to the issue of "irreparable" harm, Judge Byron found that "[v]irtually all of the potential injuries caused by [d]efendants' alleged misconduct are compensable through monetary damages." Id. at *5. This included Regions' claims for reputational injuries and loss of customer good will. Id. ("loss of good will is possible to value and remunerate"). Further, in language equally applicable here, Judge Byron held that injunctive relief was not appropriate given Regions' allegation that the defendants had *already* used its confidential information to solicit clients:

> the injuries complained of do not appear capable of redress through injunctive relief. A prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past. If, as [p]laintiff alleges, [d]efendants solicited former clients upon their departure from Regions Bank, then the harm has already been done. Without a threat of future injury or some other disruption to the status quo, the Court is at a loss to discern the value of a preliminary injunction.

Id. (internal citations omitted). Defendants respectfully submit that this Court should reject Regions claims and arguments just as Judge Byron did seven months ago.

15

III.     The Harm to the Individual Defendants Outweighs Potential Injury to Regions.

Contrary to Regions' arguments, a preliminary injunction will cause great harm to Defendants.  At the most basic level, an injunction will cause significant reputational harm to the Individual Defendants – that Regions will likely raise to clients as "proof" that Defendants have done something wrong.

Barring the Individual Defendants from having contact or communications with their clients impairs their client relationships, destroys their ability to earn a livelihood, and goes substantially beyond the specific language in the Agreements.  The effect of lost income would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on the Individual Defendants than on Regions. As noted in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeLiniere, an injunction that prevents an advisor from contacting and working with his customers:

> would leave him with no client base in a business that thrives on commissions from regular clients. If an injunction were to issue, damage to the broker while he waited ultimately to prevail would be catastrophic as a result of the loss of most of his income. Because the effect of the loss of income pending the outcome of this dispute would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on an individual broker than on Merrill Lynch, that disparity of effect supports denial of an injunction.

572 F. Supp. 246, 249 (N.D. Ga. 1983). See also Merrrill Lynch, Pierce, Fenner & Smith v. McCullen, No. 95-14329-CIV-PAINE, 1995 WL 799537 (S.D. Fla. Dec. 13, 1995) (denying an injunction on this basis).

Continuing the present restraints will also cause Defendants to be in breach of the client duties and obligations.  As noted above, Defendants are subject to rules and regulations set by FINRA and the SEC.  Those rules and regulations require, *inter alia,* that Defendants promptly

16

respond to and communicate with clients.  In its current form, the Court's December 29th Order prevents the Defendants from servicing clients who have already moved their accounts to Wells Fargo or who are in the process of moving their accounts.  The Order also restricts Defendants from working with clients who unilaterally express a desire to transfer their accounts.  Thus, extending the present restraints will make it impossible for Defendants to communicate with clients and otherwise comply with their FINRA and other regulatory obligations.  As discussed below, such restrictions will cause a significant hardship for clients as it unfairly restricts their right to work with the financial advisor of their choosing.

Finally, FINRA and the SEC require Wells Fargo (and other regulated broker dealers) to archive and preserve emails and other written communications.  See FINRA Rule 4511 and SEC regulation, 17 C.F.R. § 240.17a–4; see, also, North v. Smarsh, Inc., 160 F. Supp. 3d 63, 72 (D.D.C. 2015) ("FINRA Rule 3110(a)-(d) [now FINRA Rule 4511] and SEC regulation at 17 C.F.R. § 240.17a–4(f) require securities broker-dealers to preserve all written and electronic communications.  Copies of all electronic communications must be preserved 'exclusively in a non-rewritable, non-erasable format.' 17 C.F.R. § 240.17a–4(f)(2)(ii)(A)."). Wells Fargo's emails are archived in a regulatory compliant storage system, and "[t]he electronic record is the original and official federal record of these communications." Ibid.  Wells Fargo cannot overwrite or erase records stored, which must be effectively tamper-proof with no ability to alter or delete them until after the designated retention period.  Wells Fargo therefore has a regulatory obligation to preserve them.

In sum, Defendants face a far greater threat of irreparable harm than Regions.  Regions can easily quantify any alleged damages.  Defendants face real damages that cannot be

17

easily measured if a preliminary injunction is issued. Defendants respectfully submit that the balance of equities weighs heavily in their favor.

    IV.    <u>Granting a Temporary Injunction Would Harm, Not Serve, the Public Interest</u>.

A preliminary injunction is an extraordinary remedy never awarded as of right" and courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.[12]

In support of its claims for injunctive relief, Regions argues that the public interest is best served by enforcing the at-issue agreements and preserving its alleged business interests. <u>See</u> Amended Motion, pp. 24-25. This is a biased view. Defendants submit that the public interest is better served by allowing customers to freely choose their professional financial advisors and to transfer their accounts to new brokerage houses untethered by contractual arrangements to which they are not a party.

A client's freedom of choice is a paramount concern and a highly protected right. FINRA has taken affirmative steps to insure that a client gets to select his/her own financial advisor. For example, FINRA Rule 2140 provides that:

> No member or person associated with a member shall interfere with a customer's request to transfer his or her account in connection with the change in employment of the customer's registered representative where the account is not subject to any lien for monies owed by the customer or other bona fide claim. Prohibited interference includes, but is not limited to, seeking a judicial order or decree that would bar or restrict the submission, delivery or acceptance of a written request from a customer to transfer his or her account.

<u>See</u> FINRA Rule 2140, attached hereto as Exhibit H.[13]

---

[12] <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7, 22 (2008).

[13] As Robert R. Glauber, former Chairman and CEO of the NASD (now FINRA) notes, "[i]t is a fundamental right of an investor to choose with whom he or she does business, and the fact that a broker changes firms should not affect an investor's ability to continue … to do business with that broker." <u>See</u> Exhibit I hereto.

Regions is familiar with FINRA Rule 2140. Deena J. Espinosa, the Individual Defendants' former manager, verified the Complaint and submitted an Affidavit in support of Regions' Motion. As a FINRA regulated person, Ms. Espinosa is expected to know and comply with Rule 2140. Defendants believe that Regions filed this action in an attempt to avoid FINRA's jurisdiction. On this basis, Wells Fargo intends to, at the appropriate time, file a Motion to Compel Arbitration so that this action can be heard by a FINRA Panel of Arbitrators.

Like FINRA, courts have also long recognized an investor's "fundamental right" to choose with whom he or she does business, and "the fact that a broker changes firms should not affect an investor's ability to continue to do business with that broker." Edward D. Jones & Co., L.P. v. Kerr, 415 F. Supp. 3d 861 (S.D. Ind. 2019); see also Variable Annuity Life Ins. Co. v. Laeng, 8:12-cv-2280-T-33MAP, 2013 WL 499982, at * 7 (M.D. Fl. Jan. 2, 2013) (denying plaintiff's request for a preliminary injunction because, *inter alia*, "the public interest is better served with open competition in the securities field and access to advisors of clients' choice"); Morgan Stanley v. Frisby, 163 F. Supp. 2d 1371, 1322 (N.D. Ga. 2001) ("The public has little interest in having its choice restricted to brokers other than the one who has served them pending the resolution of this dispute…the inability of a client to consult with a trusted advisor for even a single day could result in enormous financial losses). This was, perhaps, most eloquently addressed in Merrill Lynch, Pierce, Fenner & Smith v. McCullen, when the court noted that:

> [e]ach member of the affected public has a right to know that the broker with whom he has entrusted his accounts, is no longer servicing his accounts because she has gone to another brokerage firm. It is in the best interest of the public, therefore, that these affected clients be informed of [the defendant's] move so that they might decide on their own whether to follow her to Prudential or to stay with Merrill Lynch to be serviced by another broker there.

McCullen, supra, 1995 WL 799537, at *3.

While the above decisions are influential, Judge Byron's decision is perhaps the most persuasive because it directly addressed Regions' assertion that its contracts are more important than a customer's freedom of choice. On this point, Judge Byron found that:

> In a time of market volatility, a client's inability to consult a trusted advisor could result in enormous financial losses. This danger outweighs any injury Plaintiff might suffer due to the disloyalty of two former employees. Thus, issuance of a preliminary injunction could actively obstruct the public interest.

2020 WL 6870815 at *6.

Investors who want to work with the Individual Defendants should not be limited by a dispute to which they are not a party.

## CONCLUSION

For the foregoing reasons, and in addition to those set forth in the Individual Defendants' respective Affidavits, Defendants respectfully ask the Court to:

(i) Dissolve the temporary restraints set forth in the Court's December 29, 2020 Order;

(ii) Allow Defendants to file a motion for recovery of the reasonable attorney's fees and costs incurred in relation to opposing Plaintiff's Amended Motion; and

(iii) Grant such other and additional relief as the Court deems just and proper.

Respectfully submitted this 4th of January, 2021. Certificate of Service attached hereto as Exhibit J.

/s/ Craig Stein
Craig Stein, Esq. (Trial Counsel)
Florida Bar No. 009776
STEIN & STEIN, P.A.
205 Worth Avenue, Suite 203
Palm Beach, FL 33480
Phone: (561) 659-8802
Fax: (561) 659-8806
*Co-Counsel for Defendants*

/s/ Thomas B. Lewis
Thomas B. Lewis, Esq. (Trial Counsel)
*Pro Hac Vice*
STEVENS & LEE, P.C.
100 Lenox Drive, Suite 200
Princeton, New Jersey 08648
Phone: (609) 987-5335
Fax: (610) 371-8585
*Co-Counsel for Defendants*